IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LIBERTY MUTUAL INSURANCE )
COMPANY, )
 )
      Plaintiff, )
 )
v. ) Civil Action No. 16-1613
 )
PENN NATIONAL MUTUAL CASUALTY )
INSURANCE COMPANY, )
 )
      Defendant. )

## OPINION

**Mark R. Hornak, United States District Judge**

    Liberty Mutual Insurance Company ("Liberty Mutual") brings this declaratory judgment action seeking a determination that Defendant Penn National Mutual Casualty Insurance Company ("Penn National") had a duty to defend Liberty Mutual's insured, Cost Company, in an underlying wrongful death action in which a construction worker was killed by a large concrete panel manufactured by Penn National's insured, Pittsburgh Flexicore Co. Inc. ("Flexicore"). In this action, Liberty Mutual seeks reimbursement from Penn National for the costs expended to defend Cost Company and the amount paid to settle the litigation, plus prejudgment interest on both amounts. Presently before the Court are the parties' cross-motions for summary judgment limited to a determination of whether Penn National had a duty to defend Cost Company. ECF Nos. 31 & 35. The Court heard oral argument on the Motion on February 12, 2018. ECF No. 47. After careful consideration of the parties' positions, and for the following reasons, Penn National's motion for summary judgment will be denied, and Liberty Mutual's motion for summary judgment will be granted.

I.   **FACTUAL BACKGROUND**

The underlying incident giving rise to the present action occurred on October 22, 2009, during a construction project for a Senior Care home located at the Grandview Building in New Kensington, Pennsylvania. On that date, a laborer working on the project, Yamil Alexander Gonzalez, was killed when a Flexicore concrete panel collapsed on top of him. Liberty Mutual's insured, Cost Company was a subcontractor on the project, who further subcontracted with Flexicore, Penn National's insured. The present action is based on Penn National's declining to defend and indemnify Cost Company in the underlying state court action as an "additional insured" pursuant to a Subcontract Agreement entered into between Cost Company and Flexicore. Flexicore was to add Cost Company as an Additional Insured on its' policies issued by Penn National. The relevant facts as to the underlying action, the Subcontract Agreement, the Penn National insurance policies, and the tender of the defense to Penn National are as follows.

A.   **Underlying Wrongful Death Action**

On October 13, 2010, Karina Ramirez, Mr. Gonzalez's widow, individually and as administrator of Mr. Gonzalez's estate, along with Maria Gonzalez, Mr. Gonzalez's mother, filed a wrongful death action (the "Underlying Action") in the Court of Common Pleas of Allegheny County against several parties involved in the Grandview Building construction project, including Cost Company and Flexicore. An Amended Complaint was filed on December 13, 2010, in the Court of Common Pleas in Allegheny County at GD No. 10-19146 (the "Underlying Complaint"). *Ramirez v. v. Longwood at Oakmont, Inc.*, Court of Common Pleas of Allegheny County, GD. No. 10-19146, Amended Complaint, Dec. 13, 2010 (Ex. A to Pl.'s Complaint (ECF No. 1-2)). As set forth in the Underlying Complaint, on October 22, 2009, Mr. Gonzalez was working as a laborer

on the project when a large concrete panel manufactured by Flexicore collapsed from the ceiling above where he was working and killed him. Underlying Compl. ¶¶ 17-18, 16. Also sued in the Underlying Action were the owners and managers of the Grandview Building construction project, Longwood at Oakmont, Inc., Presbyterian SeniorCare, the general contractor, Mistick Corporation, and the drywall subcontractor, V+I Drywall, Inc.

The Underlying Complaint sets forth a Wrongful Death claim against Cost Company in Count V, in which it is alleged that Cost Company "caused the large section of concrete floor decking to collapse and ultimately kill" Mr. Gonzalez. *Id.* ¶ 61. Count VI sets forth a Survival Action claim against Cost Company, in which it is alleged in part that Cost Company failed to implement and maintain adequate safety measures and intentionally manipulated or modified designs and materials exposing workers to substantial risks. *Id.* ¶¶ 71-72.

The Underlying Complaint sets forth claims of "Wrongful Death (Products Liability)" (Count IX) and "Survival Action (Products Liability)" (Count X) against Flexicore. *Id.* ¶¶ 92-113. Flexicore "designed and/or manufactured the concrete panels" for the construction project. *Id.* ¶ 16. At the time of the accident, "the concrete panel was being used for its intended use and the decedent was unaware of any defect in the concrete panel or of any danger as a result of standing beneath it." *Id.* ¶ 95. The "concrete panel was in the same condition as it was when the defendant, Pittsburgh Flexicore Co., Inc., sold and delivered it to the construction project," and the "condition of the product remained unchanged from the time the concrete panels were delivered to the construction project, to the time the concrete panel collapsed and killed." *Id.* ¶ 96. Count IX further alleges the following particulars:

> 97. When the decedent sustained the injuries alleged above, the concrete panel was in a defective condition, unreasonably dangerous to a user or consumer, in that the

3

concrete panel failed to conform to the manufacturing specifications, failed to have proper warnings or instructions concerning its use, and was an unsafe design. These conditions were not observable by the decedent, who relied on the duty of the defendant, Pittsburgh Flexicore Co., Inc., to manufacture and deliver the concrete panel in a condition fit for use for the purpose intended.
The defendant, Pittsburgh Flexicore Co., Inc. is strictly liable for its conduct;

98. When the decedent sustained the injuries alleged above, the concrete panel was in a defective condition, unreasonably dangerous to a user or consumer, in that the defendant negligently failed to insure that the concrete panel conformed to the manufacturing specifications, negligently failed to have proper warnings or instructions concerning its use, and was negligently designed. These conditions were not observable by the decedent, who relied on the duty of the defendant, Pittsburgh Flexicore Co., Inc., to manufacture and deliver the concrete
panel in a condition fit for use for the purpose intended;

99. The defective condition of the concrete panel manufactured by the defendant, Pittsburgh Flexicore Co., Inc., was a proximate cause of the injuries sustained by decedent, Yamil Alexander Gonzalez. These injuries eventually resulted in his death. . . .

*Id.* ¶¶ 97-99. In Count X, it is alleged that Flexicore "intentionally manipulated and/or modified designs and/or materials knowing that such manipulation and/or modifications would expose workers to substantial risks." *Id.* ¶ 110.

## B. Subcontract Agreement between Cost Company and Flexicore

Cost Company and Flexicore entered into a subcontract in which Cost Company was identified as the Contractor and Flexicore as the Subcontractor ("Subcontract Agreement"). Compl. ¶ 13 (Subcontract Agr., Aug. 5, 2008, Ex. B to Comp. (ECF No. 1-3)). The Subcontract Agreement provides that Flexicore

agrees to furnish all necessary labor, material, services, equipment machinery, tools, and any other items proper or necessary in the doing of the work herein undertaken by the Subcontract to fully perform and in every respect complete the following items of work:

> **Manufacture, furnish, deliver to the project site, and install all required precast hollowcore plank and solid balcony slabs required at the Grandview Apartments . . . .**

*Id.* Art. First (bold in original). Following this Article, the parties inserted a handwritten provision, initialed by representatives from both sides, stating "Pittsburgh Flexicore Co. Inc. quotation 4380 dated July 10, 2008 will become part of this Subcontract Agreement." *Id.* Quotation 4380 *excludes* "Installation" of the concrete planks by Flexicore. *Id.* Quotation 4380 (ECF No. 1-3, at 19).

Article Twenty-Fourth is titled "Safety" and provides in part that Flexicore "is solely responsible for the health and safety of its employees, agents, Subcontractors, and other persons on and adjacent to the Work Site. The Subcontractor, however, shall take all necessary and prudent safety precautions with respect to its work and shall comply, at Subcontractor's expense, . . . . with all applicable laws, . . . for the safety of persons or property, . . . ." *Id.* Art. Twenty-Fourth.

Article Twenty-Fifth is titled "Insurance" and requires, in part, that Flexicore is responsible for providing General Liability insurance and Umbrella Liability insurance covering Cost Company as an Additional Insured. *Id.* Art. Twenty-Fifth ("Subcontractor . . . will provide General Liability, Umbrella Liability, . . . insurance covering the . . . Contractor . . . (the "Additional Insured[]))." Article Twenty-Fifth further explains the insurance requirements imposed on Flexicore as follows:

> The obligation of [Flexicore] is to provide such adequate insurance to protect [Cost Company] and the Additional Insureds from all risks and/or occurrence that may arise or result, directly or indirectly from [Flexicore's] work or presence on the jobsite and all risks of injury to [Flexicore's] employees, sub-Subcontractors' employees, and other agents. . . . This obligation shall not be avoided by allegations of contributory or sole acts, failure to act, omissions, negligence or fault of the Additional Insureds. Each policy of insurance shall waive subrogation against the Additional Insureds. As such, each policy of insurance provided for herein, except

> Worker's Compensation, shall name [Cost Company] . . . as an additional insured under the policy, and each policy of insurance provided for herein shall be primary with no right of contribution against [Cost Company] . . . or their insurers.

*Id.* (emphasis in original).

Article Twenty-Sixth is titled "<u>General Indemnification</u>" and provides in part as follows:

> [Flexicore] shall protect, indemnify, hold harmless, and defend [Cost Company] . . . against any and all claims, causes of action, suits, losses, costs, or damages, including attorneys' fees, resulting from the acts, failure to act, omissions, negligence, or fault of [Flexicore] . . . whether or not said claim, cause of action, suit, loss, cost, or damage is alleged to be caused in part by any act, failure to act, omission, negligence, or fault of any of the Indemnities or their employees, and [Flexicore] shall bear any expense which any of the Indemnities may have by reason thereof, or on account of being charged with such claim, cause of action, suit, loss, cost, or damage, unless such claim, cause of action, suit, loss, cost, or damage is solely caused by the Indemnities sole act, failure to act, omission, negligence, or fault.

*Id.* Art. Twenty-Sixth.

### C. The Penn National Policies

There were two relevant Penn National policies in effect on October 22, 2009. A general commercial liability policy, Policy No. CL9 0079173 (the "Penn National Policy"), and an umbrella insurance policy, Policy No. UL90079173 (the "Penn National Umbrella Policy"). Ex. 2 and Ex. 3 to Pl.'s App'x (ECF No. 35-4, at 26-280 & ECF No. 35-5, at 2-54.) If Cost Company is deemed to be an additional insured under the Penn National Policy, it will also be an additional insured under the Umbrella Policy. *See* ECF 35-5, at 40. Therefore, the Court will refer only to the provisions provided in the Penn National Policy to resolve whether Penn National had a duty to defend.

The Penn National Policy contains two relevant Additional Insured endorsement provisions. The first is an Endorsement concerned with "Ongoing Operations" titled "Automatic

6

Additional Insureds – Owners, Contractors and Subcontractors (Ongoing Operations)." ECF No. 35-4, at 127-28. The "Ongoing Operations Endorsement" states in relevant part as follows:

> **A.** The following provision is added to **SECTION II – WHO IS AN INSURED**
>
> 1. Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>    **(1)** Your acts or omissions; or
>
>    **(2)** The acts of omissions of those acting on your behalf;
>
>    in the performance of your ongoing operations for the additional insured(s) at the location or project described in the contract or agreement.
>
>    A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

ECF No. 35-4, at 127.

The second Endorsement is concerned with "Completed Operations" and is titled "Automatic Additional Insureds – Owners, Contractors and Subcontractors (Completed Operations)." ECF No. 35-4, at 128-29. The "Completed Operations" states in relevant part as follows:

> **A.** The following provision is added to **SECTION II – WHO IS AN INSURED**
>
> 1. Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured for the "products-completed operations hazard", but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work", at the location or project designated and described in the contract or agreement, performed for that additional insured and included in the "products-completed operations hazard".

7

> A person's or organization's status as an additional insured under this endorsement ends when the obligation to provide additional insured status for the "products-completed operations hazard" in the written contract or agreement end.

ECF No. 35-4, at 129.

### D. Tender of Defense and Indemnification to Flexicore

By letter dated May 18, 2011, counsel retained by Liberty Mutual to represent Cost Company in the Underlying Action, tendered its defense and indemnification to Flexicore. Letter from P. Walsh to R. Weinheimer, May 18, 2011 (Ex. 6 to Pl.'s App'x (ECF No. 35-5, at 170)). Attorney Walsh explained that "Flexicore was contractually obligated to name Cost Company as an additional insured under Flexicore's liability policies." *Id.* Several additional letters tendering the defense to Flexicore were sent, since no response was received from either Flexicore or Penn National. *See* Ex. 6-9 & 11 to Pl.'s App'x.

By letter dated March 28, 2014, nearly three years after Liberty Mutual's initial request, Penn National denied the tender. Letter from G. Berry to P. Walsh, Mar. 28, 2014 (Ex. 12 to Pl.'s App'x (ECF No. 35-6, at 15-16)). Penn National explained that Cost Company was not entitled to indemnification under Article Twenty-Sixth "as the language therein does not clearly and unambiguously evidence an agreement by the Pittsburgh Flexicore Co., Inc., to indemnify Cost Company for its own negligence." *Id.* at 1 (ECF No. 35-6, at 15). Penn National further explained its denial of the tender as follows:

> inasmuch as, without limitation (1) Pittsburgh Flexicore Co., Inc.'s operations for Cost Company (i.e. delivery of the pre-cast plank product) had been completed at the time of the accident; (2) the plank product had been put to its intended use by Cost Company, and (3) in fact the plank product had been installed and modified by Cost Company prior to the accident, there is no additional insured status applicable to Cost Company under paragraph Twenty-Fifth of the Subcontract Agreement." *Id.* at 1-2 (ECF No. 35-6, at 15-16). In addition, Penn National stated

8

> that the "Automatic Additional insureds endorsement in the Penn National
> Insurance policy issued to Pittsburgh Flexicore Co., Inc. provides that any
> additional insured status which may have otherwise been granted was terminated
> when [Flexicore's] operations for [Cost Company] were completed.

*Id.* at 2 (ECF No. 35-6, at 16). Ultimately Liberty Mutual provided a defense to Cost Company in the Underlying Action, and Penn National provided a defense to Flexicore. On July 17, 2015, Cost Company entered into a settlement in the Underlying Action. Compl. ¶ 48. Liberty Mutual filed the instant Complaint on October 24, 2016, seeking a declaration that Penn National had a duty to defend Cost Company. ECF No. 1.

## II. STANDARD OF REVIEW

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a

factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

## III. DISCUSSION

The broad question before the Court is whether Penn National had a duty to defend under either the Ongoing Operations Endorsement or the Completed Operations endorsement. As explained below, after reviewing the Underlying Complaint and the Penn National Policy, the Court concludes that Penn National had a duty to defend Cost Company under the "Ongoing Operations Endorsement." Alternatively, Penn National's duty to defend was also triggered under the safety obligations under the Subcontract Agreement as ongoing operations, or under the "Completed Operations Endorsement."

### A. Relevant Law

"In actions arising under an insurance policy, [Pennsylvania] courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy." *Erie Ins. Grp. v. Catania*, 2014 PA Super 136, 95 A.3d 320, 322 (Pa. Super. 2014) *(citing McEwing v. Lititz Mut. Ins. Co.*, 2013 PA Super 171, 77 A.3d 639, 646 (Pa. Super. 2013) (citations omitted)). It is the function of the Court to interpret an insurance contract. *Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). "The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian* Blind *Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

10

"Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Amer. Auto. Ins. Co.*, 658 F.3d at 321; *see also Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548, 551 (1967). "Words of common usage must be 'construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms.'" *Amer. Auto. Ins. Co.*, 658 F.3d at 320 (*quoting Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006, citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

Under Pennsylvania law, "a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir.2005); *see also Holy Ghost Carpatho-Russian Greek Catholic (Orthodox) Church of the Eastern Rite of Phoenixville, Pa. v. Church Mut. Ins. Co.*, 492 F.App'x 247, 249 (3d Cir. 2012) ("'obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the complaint in the action'") (*quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 330, 908 A.2d 888, 896 (2006) (quoting *General Accident Insurance Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997))). "A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's

11

complaint triggers coverage." *Mut. Ben. Ins. Co. v. Haver*, 555 Pa. 534, 538, 725 A.2d 743, 745 (1999). "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *Ramara*, 814 F.3d at 673 (citing *Sikirica*, 416 F.3d at 226); *see also Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 609, 2 A.3d 526, 541 (2010) ("An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy") & *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484, 488 (1959) ("where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril"). "As the Pennsylvania Supreme Court has explained, '[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover.'" *Ramara*, 814 F.3d at 673 (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1368 (1987)).

"To determine whether a claim potentially falls within the scope of a policy, [the Court] compares 'the four corners of the insurance contract to the four corners of the complaint.'" *State Auto. Mut. Ins. Co. v. Lucchesi*, 563 F. App'x 186, 189 (3d Cir. 2014) (quoting *Jerry's Sport Center, Inc.*, 606 Pa. at 609, 2 A.3d at 541). "Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence." *Ramara*, 814 F.3d at 673 (citing *Kvaerner*, 908 A.2d at 896). In reviewing the allegations contained in the underlying complaint, the allegations must be viewed as true, and be liberally construed in the insured's favor. *Jerry's Sport Center, Inc.*, 606 Pa. at 610, 2 A.3d at 541;

12

*Ramara*, 814 F.3d at 673. "Thus, an insurer has a duty to defend if there is any possibility that its coverage has been triggered by allegations in the underlying complaint." *Ramara*, 814 F.3d at 674 (citing *Jerry's Sport Center, Inc.*, 606 Pa. at 610, 2 A.3d at 541).

### B. The Duty to Defend under the Ongoing Operations Endorsement

The Ongoing Operations Endorsement requires that there be a "written contract or agreement to name" Cost Company as an additional insured and that the bodily injured alleged in the underlying action "was caused, in whole or on part, by" Flexicore's "acts or omissions" in "the performance of" Flexicore's "ongoing operations for" Cost Company" at the location or project described in the contract or agreement." ECF No. 35-4, at 127. The requirements of the "Ongoing Operations Endorsement" are met here.

There was a "written contract" naming Cost Company as an additional insured and the alleged "bodily injury" occurred "at the location or project described" in the agreement. The Underlying Complaint alleges that Mr. Gonzalez's death occurred because Flexicore "negligently failed to have proper warnings or instructions concerning [the] use" of the concrete panel. Underlying Compl. ¶ 98. In addition, there are no allegations in the Underlying Complaint that Flexicore's operations were completed. Thus, the Underlying Complaint alleges that Flexicore's "acts or omissions" in the performance of Flexicore's "ongoing operations" played some role, "in whole or in part," in causing Mr. Gonzalez's death (the "bodily injury"). *Id.* This language plainly raises the *possibility* that Mr. Gonzalez's death was caused in whole or in part by Flexicore's acts or omissions and under the Ongoing Operations Endorsement it is this possibility that trigger's Penn National's duty to defend. *Ramara*, 814 F.3d at 674.

Penn National argues that Cost Company cannot be an additional insured because the Underlying Complaint only alleges strict liability claims against Flexicore (not negligence) for its product (including the allegation of a failure to warn), which cannot be considered "ongoing operations." Initially, the Court disagrees with Penn National's proposed definition of "ongoing operations" to the extent that Penn National equates "ongoing operations" with "work," and excludes the conduct of delivering a product from "ongoing operations." Def. Br. at 9 (ECF No. 32) (defining "ongoing operations" as "work, action, and/or exertion of some kind of action or mechanical process, as opposed to the periodic delivery of product"). The Subcontract Agreement provides that Flexicore's "work" includes the manufacturing, furnishing, *and delivery* to the project site the product. Subcontract Agr. Art. First. Thus, "ongoing operations" would appear to encompass more than "work," and at a minimum must include the delivery of the product.

More significantly, for the Court to conclude that the Underlying Complaint does not assert negligence claims against Flexicore would require the Court to ignore the allegations in Paragraph 98 of the Underlying Complaint. Paragraph 98 alleged that Mr. Gonzalez's injuries occurred because "the concrete panel was in a defective condition" and was "unreasonably dangerous to a user or consumer" because Flexicore "negligently failed to insure that the concrete panel conformed to the manufacturing specifications, negligently failed to have proper warnings or instructions concerning its use, and was negligently designed." Underlying Compl. ¶ 98. Case law supports that a negligent failure to warn claim is a claim concerning the party's conduct; *i.e.*, part of "ongoing operations." *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 89 (Pa. Super. Ct. 2007) (installation of product "was not completed at the time of the installation . . . because of the negligent failure to warn, and, therefore, the operation was not complete"); *Harford Mut. Ins. Co.*

*v. Moorhead*, 396 Pa. Super. 234, 251, 578 A.2d 492, 501 (1990) (claim brought "under the auspices of a 'negligent failure to warn,'" is appropriately viewed "as one charging improper *conduct,* and not one of making a defective *product*"); *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Kaminski Lumber Co. Inc.*, 397 Pa. Super. 484, 487, 580 A.2d 401, 402 (1990) (claims alleging failure to inspect and warn "relate only to conduct or service and not a defective product, thus, injuries which result from such 'conduct' are not 'damages arising out of an insured's product'" and therefore "exclusion for products hazard does not apply to the claims . . . regarding [the] failure to warn"); and *Devich v. Commercial Union Ins. Co.*, 867 F. Supp. 1230, 1234-35 (W.D. Pa. 1994) (failure to warn claim must be viewed as claim for improper conduct and stating that "*Harford* stands for the proposition that an insurer must accept a claim as stated in the complaint and cannot justify its decision to deny coverage by attempting to recharacterize the claim to fit within the terms of the exclusion").

Finally, in *Selective Insurance Company v. Lower Providence Township*, the District Court interpreted a nearly identical additional insured provision in the same manner. *Selective Ins. Co. of S.C. v. Lower Providence Twp.*, No. CIV.A. 12-0800, 2013 WL 3213348 (E.D. Pa. June 26, 2013). In *Selective Insurance*, an employee of a landscaping company, Lawn Rangers, suffered "bodily injury" on Township property while working for Lawn Rangers. The Township, as a named additional insured under the "ongoing operations" provision of Lawn Ranger's insurance policy, tendered the defense to Selective. The ongoing operations provision made "the Township an additional insured 'with respect to liability for "bodily injury" . . . caused, in whole or part by . . . [Lawn Rangers'] ongoing operations performed for'" the Township. *Selective Ins. Co.*, 2013 WL 3213348, at *10. Selective argued that the Township is not an additional insured because

15

pursuant to the "ongoing operations" provision the underlying complaint had to allege that the bodily injury occurred as a result of negligence by Lawn Rangers, and instead the allegation was that the injury occurred when the employee fell on Township property due to the Township's negligent conduct. *Selective Ins. Co.*, 2013 WL 3213348, at *9.

The District Court disagreed noting that the additional insured provision required only that the bodily injury be caused, in whole or in part, by "ongoing operations;" with no requirement that the injury be caused by Lawn Rangers' negligence. *Id.* The District Court interpreted the phrase "ongoing operations" by looking at its "plain or ordinary meaning," to conclude that the "phrase would only require that the ongoing operations play some role in the bodily injury at issue." *Id.* The provision in this case is nearly identical. The allegations of the Underlying Complaint alleged negligence not only on the part of Cost Company, but also Flexicore, and therefore under the plain and ordinary meaning of ongoing operations, Flexicore played some role in the bodily injury at issue to trigger its duty to defend. Accordingly, Penn National had the duty to defend Cost Company in the Underlying Action because based on the factual allegations in the Underlying Complaint potentially triggering coverage.

### C. Ongoing Operations under the Subcontract Agreement's Safety Provision

The Underlying Complaint included allegations that Cost Company failed to provide a safe place to work and failed to recognize that safety measures were inadequate. Underlying Compl. ¶¶ 64.a & 64.s. Liberty Mutual argues that these allegations trigger the duty to defend because Flexicore was obligated to provide a safe place to work and provide adequate safety measures. Pl. Br. Supp. at 24-25 (citing *Zurich Am. Ins. Co. v. Indian Harbor Ins. Co.*, 235 F. Supp. 3d 690, 697-98 (E.D. Pa. 2017)). Liberty Mutual further argues that the duty to defend is triggered because

16

"ongoing operations" were occurring based on Flexicore's safety obligations under the Subcontract Agreement. The Subcontract Agreement provides that Flexicore "is solely responsible for the health and safety of its employees, agents, Subcontractors, and other persons on and adjacent to the Work Site," and that Flexicore "shall take all necessary and prudent safety precautions with respect to its work . . . for the safety of persons or property." Subcontract Agr. Art. Twenty-Fourth.

Penn National, in contrast, reads the safety provision in the Subcontract Agreement to mean that Flexicore was solely responsible for the health and safety of "*its*" – meaning Flexicore's – "employees, agents, Subcontractors, and other persons on and adjacent to the Work Site," and Mr. Gonzalez does not fall within one of these categories. The Court agrees with Liberty Mutual that Penn National's interpretation is strained in that it requires the Court to view the phrase "other persons on and adjacent to the Work Site" as meaning "Flexicore's other persons" on and adjacent to the Work Site. The natural reading of the provision, however, is that Flexicore's safety responsibilities extend to the health and safety of Flexicore's employees, Flexicore's agents, Flexicore's Subcontractors (such as Cost Company), "and other persons on and adjacent to the Work Site." Otherwise, to read the provision as Flexicore proposes would who "Flexicore's other persons" are must be in a category not specified by Flexicore that does not include the already listed categories of Flexicore's employees, agents, or Subcontractors.

When Penn National was requested to defend Cost Company, a review of the Underlying Complaint in light of the Penn National policy should have led to the conclusion that "the allegations of the underlying complaint *potentially* could support recovery under the policy" and therefore it is not "absolutely clear" that liability could not be within the policy coverage. *Ramara*,

814 F.3d at 673, 674. While the Court recognizes the potential broad liability that might be implicated[1] by the safety provision, the Court is solely concerned with determining whether "there is any possibility that [Penn National's] coverage has been triggered by allegations in the underlying complaint." *Ramara*, 814 F.3d at 674. By that standard the Underlying Complaint here potentially triggers coverage.

### D. The Duty to Defend under the Completed Operations Endorsement

Alternatively, Liberty Mutual argues that the duty to defend is demonstrated by the Completed Operations Endorsement. The requirements of the Completed Endorsement also appear to have been met. There was a "written contract" naming Cost Company as an additional insured for the "products-completed operations hazard." ECF No. 35-4, at 129. As explained above, the alleged "bodily injury" was "caused, in whole or in part, by '[Flexicore's] work', at the location or project described" in the agreement. *Id.* Again, Penn National's counter argument is that Flexicore was sued for bodily injury that occurred solely as a result of Flexicore's product, not Flexicore's work, a position that the Court disagrees with as being inconsistent with the definition of the "work" Flexicore is to perform as provided in the Subcontract Agreement. Flexicore is to manufacture, furnish, and deliver to the project site the required concrete planks to the project site. Subcontract Agr. Art. First. The Underlying Complaint alleges that Mr. Gonzalez

---

[1] The Court notes that this is not a case in which the duty to defend arose in circumstances that are far removed from Flexicore's obligations under the Subcontract Agreement (for instance if Flexicore's product was not at all involved in the bodily injury). *See, e.g.,* Erie *Ins. Exchange v. Eisenhuth,* 305 Pa. Super. 571, 451 A.2d 1024 (1982) (no auto insurance coverage implicated where insured is shot by gun while sitting in vehicle); *Lucas-Raso v. Am. Mfrs. Ins. Co.,* 441 Pa. Super. 161, 167, 657 A.2d 1, 3 (1995) (harm arising from an instrumentality or external force other than the covered product (here an automobile) will defeat a claim that the product contributed to the cause of the injuries); *see also Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care,* 136 F. App'x 489, 491–92 (3d Cir. 2005) (noting that causation is subject to the limitation that if the relevant injury is caused by "an instrumentality or external force other than the" instrumentality insured seeks to have covered, the insurer is not required to provide coverage). In this case, there is no dispute that the Underlying Complaint alleges that Flexicore's product was directly involved in the bodily injury.

was killed as a direct result of the concrete plank. Viewing the allegations in favor of the insured, the Underlying Complaint sufficiently alleges that the bodily injury was caused by Flexicore's "work" so as to trigger the duty to defend.

## IV. CONCLUSION

For the foregoing reasons the Court finds that Penn National had a duty to defend Cost Company as an Additional Insured under the terms of the Penn National Policy. Accordingly, Liberty Mutual's Motion for Summary Judgment (ECF No. 35) will be granted and Penn National's Motion for Summary Judgment will be denied (ECF No. 31).

An appropriate Order will be entered.

Mark R. Hornak
United States District Judge

Dated: August 15, 2018

cc: All counsel of Record